ALLEN J. HASTINGS, Respondent, *v.* THE BROOKLYN LIFE INS. CO., Appellant.

*Supreme Court, Fifth Department, General Term, June 22, 1889.*

1. *Evidence.  Insurance.*—An agreement made by an agent, who is not authorized to modify any of the terms and conditions of an insurance policy, to extend the time of payment of the premium, is incompetent.
2. *Same.  Receipt of letter.*—It is incumbent upon the addressed party to show that a letter, duly directed and mailed was not actually received.
3. *Trial.  Removal of error.*—In order to cure an error in the admission of incompetent evidence, there must be an unqualified withdrawal of the evidence, from the consideration of the jury.
4. *Same.*—Though the condition of prompt payment of the premium was waived, the company has the right at any time to insist upon the payment of the premiums remaining unpaid, and to terminate the period which has been given the insured to pay the same ; and a charge by the trial judge to such effect is not error.

The plaintiff is the assignee of a policy of life insurance, issued by the defendant, and which was so assigned by the personal representative of the insured.

The motion was made by the defendant for a new trial, upon a case and exceptions ordered to be heard at the general term in the first instance, upon a verdict rendered at the circuit.

*Casey & Rumsey*, for plaintiff.

*Wm. F. Cogswell & Wm. H. Ford*, for defendant.

MACOMBER, J.—The defendant issued to Edwin A. Walter, of Kendall Creek, Pennsylvania, on the 5th day of June, 1882, a policy of life insurance, payable to his personal representatives, in the sum of $2,500, upon the payment of the assured, semi-annually, of a premium of $25.87, on the 5th day of December, and of June, in each year.  The assured failed to pay the premium due on the 5th day of December, 1885, according to the terms of the policy, and subsequently gave his note to the company, which was received by it, by which he promised to pay the company,

35

ninety days thereafter, this premium. At the expiration of the ninety days, the note not having been paid another note for a like amount was given by the assured, at sixty days, which contained the condition, that if not paid, at maturity, the policy should be rendered null and void. This note was never paid. A like sum, for the semi-annual premium, due the 5th day of June, 1886, also remained unpaid at the time of the death of the assured, which occurred on the 6th day of October, 1886.

The fourth condition of the contract of insurance, provided that none of the conditions of the contract could be waived, except by an agreement in writing, signed either by the president or secretary of the company.

The case, as it was finally submitted to the jury, involved two important questions. One of them was whether or not Mr. Dutcher, the secretary of the company, had not orally agreed with the insured to waive the condition of prompt payment, and had extended the time for making such payment, so as to save the policy from forfeiture. It becomes necessary, therefore, to examine the evidence upon which the proposition was submitted to the jury for its decision.

The plaintiff's case rests upon the testimony of Harvey H. Bartholomew, who upon this subject testified as follows: " I was present at a conversation between Mr. Dutcher and Dr. Walter, in the office of Drs. Beninghoff and Walter. The conversation was, in substance, something similar to the one of McGee with the doctor. The doctor asked him to give him paid-up policies; that he could not pay his premiums. Dutcher did not urge him as strong as McGee did, but he urged him to keep the policy. He told him he shouldn't think of leaving the company; he should keep his policy. The doctor said he could not pay the premium, and he says: ' We will extend the time to you, if necessary, rather than have you take paid-up insurance at this time.' I don't know that there was any limit given, but, as near as I can recollect, he said something like this: ' We will extend the time, or give

you time, to pay your premium, as much as will meet you or answer your purpose.'   He said, in substance, if not in words, that the company would give him until he could get around to pay it.   Dutcher told him he couldn't replace his policies again for the same amount of money ; that they did not like to see any policy holder drop out, but preferred to have policy-holders remain with them."

The account of this interview, as given by Mr. Dutcher, is essentially different from that quoted.   This interview took place in the State of Pennsylvania, where the secretary had gone from the home office, in the city of New York, for the purpose of making a periodical visit to the company's agents, and of looking generally after the affairs of the company.   No agreement was entered into in writing, and no notification of such an arrangement or agreement was made to the general office of the defendant.   In this respect, the case differs from that of Dilleber *v.* Knickerbocker Life Insurance Company (76 N. Y. 567).   In that case, the court holds substantially to the rule enunciated in Bliss on Life Insurance (section 275), which is as follows :   " The company will be bound by the acts of its president and secretary, performed in its office, whether such acts are in writing or verbal, and whether they make a contract, waive a forfeiture, or give a consent."

Much indeed may be said in favor of restricting to the place of doing its principal business the power of an officer of a company thus to change the terms of a writing.   These acts, as the authority above cited shows, when performed at the place where the company has its principal office, and where its actual existence may be said to be, are binding.

Whether such an officer, while traveling abroad, meeting casually only a person who is insured in his company, can by mere word, without giving direction to the bookkeeper or clerks to enter the same, modify orally, in essential particulars, a contract which has been entered into by his company in writing, in violation of the terms thereof, and in a

manner prohibited thereby, is at least doubtful. But in view of the conclusions to which we have arrived upon another branch of the case, it is not necessary now definitely to decide that question.

Even if it were competent for Mr. Dutcher, under the circumstances and at the place named, to make such a contract, it is apparent that the evidence of it was barely sufficient to enable the court to submit the question to the jury. The evidence of Mr. Bartholomew does not distinctly establish such a proposition, and it is only inferentially and argumentatively that a conclusion could be drawn from the evidence, that it was the intention of the parties to waive the forfeiture provided for by the terms of the policy. It is consequently a very close question whether sufficient evidence had been adduced to enable the plaintiff to go to the jury as to such waiver. It is more than doubtful if the conclusion of the jury would have been arrived at from this branch of the case alone. There was other evidence admitted, under objection and exception, which was given by Mr. Beninghoff, of an interview which he had with one McGee, who was the soliciting agent of the defendant, and not a general officer, and who was not authorized to make any modifications of the terms and conditions of the policy, either orally or in writing. Under objection and exception this witness was allowed to testify as follows : " Dr. Walter insisted, and finally McGee said, ' Now, doctor, we don't want you to leave the company.' The doctor, or rather McGee, went on to say, ' If you must take out a paid-up policy, why not take a paid-up policy for one and leave the other with us ? ' Dr. Walter said he did not feel able even to do that, that he was certainly not able to carry both, and Mr. McGee said, ' Doctor, we will make that right for you; we are not a company that will freeze any one out in that way, we will carry you along until such times as you can pay this policy.' That was about the extent of the conversation, as I remember it. In substance, Walter said he was

afraid he couldn't make the payments when they became due. I think likely he said he had some little difficulty prior to this. McGee told him that they would help him along in the matter, that they wanted him to remain in the company. I think he said he would give him time on his policy; continue it until such time as he could make the payments himself."

This testimony was, unquestionably, illegally admitted. It is not seriously attempted to maintain its competency upon this appeal. It was at no time struck out of the case. The learned judge at circuit, in his charge to the jury, to some extent broke its force by instructing the jury that such evidence " amounted to nothing whatever; it did not restore the policy or extend the time of the payment of the premium, and consequently is of no importance in the case." Yet he allowed it to remain for the consideration of the jury, ostensibly upon the subject of taking out a paid-up policy in the place of one or both of the policies held by the deceased. It was not binding, the jury was further advised by the court, inasmuch as McGee was not a general officer, being neither the president nor secretary of the company. There does not, however, appear a distinct unqualified withdrawal of this evidence from the consideration of the jury. It was much more direct in its result, as to an actual waiver or attempted waiver by an officer of the company, than that given by the witness Bartholomew in his interview with the secretary, Dutcher.

We are unable to say that this evidence, so illegally admitted under objection and exception, did not play an important part in leading the jury to its final conclusion in respect to the import of the interview between the assured and the secretary, for it would not be expected that they would define nicely between the differences in the powers of the agent or local officer in waiving a condition and those of a secretary of the company. The learned court properly instructed the jury that whether the condition was waived

in the manner testified to by the witness Bartholomew or not, yet the company had the right, at any time, to insist upon the payment of the premiums remaining unpaid and to terminate the period which had been given the deceased in which to pay the same.   It is shown that on the 27th day of May, 1886, the company caused to be mailed to the deceased a notice to the effect that the premium due May 4th of that year had not been paid, and in consequence thereof the policy had lapsed, and that they should cancel the same on their books.

Under the evidence and under the presumption made by the course of business of the defendant, the court instructed the jury that that letter was actually mailed to the assured. He instructed them, furthermore, that it did not necessarily follow that the letter was in fact received by the assured, and submitted to the jury the question whether such letter was received by him in his lifetime.

The evidence in behalf of the plaintiff upon this subject is that given by the administrator of the deceased, to the effect that in looking over the papers of his intestate, he did not find such letter.

The court was requested to charge, " that as matter of law, this letter was received by Walter."   The court refused so to charge, and the defendant excepted.   What was seemingly intended to be requested of the court to charge was, that upon showing the actual mailing of the letter with the postage thereon prepaid, a presumption arose that the same was received by the person addressed.   This manifestly is the meaning of the request, although its language is inartistic.   The rule is, as given by " Greenleaf on Evidence" (section 40), " that there is a presumption of law that a letter or other paper, duly directed and mailed, was received in regular course of the mail."   If this instruction had been given to the jury, we cannot say, from the whole case, that the verdict would have been the same as that rendered.   With a clear instruction that there was a pre-

sumption of law that Dr. Walter received this notification, thus throwing upon the plaintiff the burden of showing that it was not actually received, there might, and probably would have been effected a different result.

For these reasons, we think that the motion by the defendant for a new trial, should be granted, with costs to the defendant to abide the event.

All concur.