this appeal.  They lead to an affirmance of the order appealed from.  Order denying the plaintiff's motion for a new trial affirmed, and judgment directed for the defendant on the verdict.  All concur.

---

## HASTINGS v. BROOKLYN LIFE INS. CO.

*(Supreme Court, General Term, Fifth Department.  January 22, 1892.)*

**1. LIFE INSURANCE—ABANDONMENT OF POLICY—FAILURE TO PAY PREMIUM.**

A life insurance policy provided that it should lapse for non-prepayment of premium, and that this condition could not be waived by the company except in writing, signed by the president or secretary.  On default of payment of a premium, the company accepted the insured's note therefor, containing a provision that if not paid at maturity the policy should lapse.  The note was not paid when due, and the company notified the insured by letter that the policy had lapsed, and to advise the company if he desired to revive the policy.  Insured took no notice of this letter, and never paid the note or the next premium when it became due.  *Held,* that the non-payment of the note and premium by the insured when notified was an abandonment of the policy, and the company was not liable thereon.

**2. SAME—REVIVAL—ORAL AGREEMENT.**

In such case an oral agreement made by the secretary of the company out of the state in which the general office of the company is located cannot continue a policy in force which has lapsed for non-prepayment of premiums.

**3. EVIDENCE—PRESUMPTIONS—MAILING LETTER.**

Where a letter is duly directed and mailed, the presumption of law is that it was received by the person to whom it was directed in the regular course of the mail.

Appeal from special term, Cattaraugus county.

Action by Allen J. Hastings against the Brooklyn Life Insurance Company.  Appeal by the defendant from an order made on a case and exceptions, granting plaintiff's motion for a new trial, after a verdict for the defendant, rendered under the direction of the court.  For former report, see 6 N. Y. Supp. 374.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*W. F. Cogswell,* for appellant.  *Frank Rumsey,* for respondent.

MACOMBER, J.  This action was brought to recover upon a policy of life insurance issued by the defendant to Edwin A. Walter, of Kendall Creek, Pa., on the 5th day of June, 1882.  The assured died on the 6th day of October, 1886.  By the terms of the policy the amount of the insurance, viz., $2,500, was made payable in case of death to the personal representatives of the assured; conditioned, however, upon the prepayment by the assured, semi-annually, of a premium of $25.87 on the 5th day of December and the 5th day of June in each year.  Letters of administration were issued in the state of Pennsylvania upon the goods and chattels of the deceased, and the administrator there appointed assigned to this plaintiff all rights or claims arising under the policy, and this action was brought by the latter as such assignee.  There was an omission to pay the premium falling due on the 5th day of December, 1885, but the assured gave his note to the company for that premium, by the terms of which he promised to pay to the company, 90 days thereafter, the amount thereof.  At the expiration of the 90 days, the note not having been paid, another note for a like amount was given by him, payable in 60 days, which contained the condition that, if it was not paid at maturity, the policy which had been issued to the assured should become null and void.  This note was never paid.  A like sum for the semi-annual premium falling due the 5th day of June, 1886, also remained unpaid at the time of the death of the assured.  The payment of the semi-annual premiums above mentioned was a condition precedent to the continuance of the policy, so that, upon a failure of the assured to pay the premiums therein provided for at the times named, the policy lapsed, and the payments made thereon were forfeited to the company.  By the fourth provision of the policy this

condition of the contract could not be waived, except by an agreement in writing, signed either by the secretary or president of the defendant.

The defense of forfeiture and lapse of the policy having been set up in the answer, and proofs made of the non-payment of the renewal note given for the premium due December 5, 1885, and the non-payment of the premium due June 5, 1886, the plaintiff, to overcome such defense, gave evidence, from which it is claimed that the forfeiture clause in the policy was waived by the company, and that, consequently, the non-payment of such premiums was not a defense to the action. Such evidence consists of the testimony of Harvey B. Bartholomew, who was the agent for procuring insurance at Kendall Creek, in the county of McKean, Pa., where the assured resided at the time of procuring the insurance, and where he died. This witness, after giving evidence to the effect that the assured had, at different times, given his promissory notes for the payment of premiums, and had subsequently paid the same, gave a conversation which he had with William Dutcher, the secretary of the defendant. The testimony of this witness, after stating that Dutcher urged the assured not to throw up the policy, nor take a paid-up policy, and after Dutcher was told by Walter that he did not wish to carry the policy any longer, is as follows: "Dutcher told him, as far as time was concerned, he would give him time. If it was necessary, he would carry him a year or so, if not convenient for him to pay sooner." Walter said, in substance, to this, that, under such an agreement, he could not object to keeping it. "*Question.* Was there anything said on that occasion as to premiums not due? *Answer.* No, sir; there was no specific premium mentioned. Dr. Walter spoke in general, and said he couldn't afford to pay the premiums as they matured. *Q.* In reply to that statement, in particular, what did Mr. Dutcher say?—that he couldn't afford to pay the premiums? *A.* He told him he couldn't afford to lose the policy, and that, if he was not prepared to pay it now, he would give him time, or extension of time,—give him such time as was necessary to accommodate him. *Q.* What about the premiums that were to become due? *A.* Nothing was said about them. * * * Mr. Dutcher told him that he couldn't lose him as a policy-holder, as he was the examining physician of the company. It didn't look well for him to drop out of the company while the company was being represented there, and therefore was anxious to retain him as a policy-holder." Being further asked to state the substance of what was said, the witness answered: "The substance, as near as I remember it, was simply this: that the company would carry him,—the payment of the premium or premiums such as were due, or coming due, as I understood it. * * * That was the conversation, as near as I recollect it. I have a recollection. I can't give the identical words, but am stating the substance of what was said. Walter said, in reply, that he thought that was fair; that he couldn't think of rejecting the proposition; and the matter rested at that." The foregoing conversation was had on the 5th day of May, 1886.

Mr. Dutcher was called as witness for the defendant, and gave a version of the conversation had with Dr. Walter, the assured, which was materially different from that of the witness Bartholomew, and from which no reasonable claim could be made that the company, by his word or act, had done, or had attempted to do, ought to vary in the slightest degree the terms of the written contract between the parties. Nevertheless, the evidence of Mr. Bartholomew, except for two reasons hereinafter named, would doubtless have been sufficient to require the court to submit the question to the jury, whether the provision in the written contract had not, in fact, been waived by the defendant.

The first and paramount reason for disregarding this testimony of Bartholomew is that, in any view which may be taken of its effect, the defendant had the right to bring to an end any such arrangement, so attempted to be estab-

lished; and, upon a reasonable notice to the assured, to reinstate the parties squarely upon their written contract. The fact that such oral modification of the agreement, if made at all, was actually canceled, is fully shown by the evidence. On the 27th day of May, 1886, 21 days after the alleged conversation with the secretary of the company, the defendant wrote to the assured a letter, in which it stated that his note for the premium of $25.87 on this policy was due on the 4th day of May of that year, and had not been paid. The letter concluded as follows: "This non-payment, you are aware, lapsed your policy, and we are thereby obliged to cancel it on our books. If you have any desire to restore it to full force, please be good enough to inform us at once." The evidence respecting the actual mailing of this letter to the assured is much stronger in the case as now presented than it was upon the former appeal. *Hastings* v. *Insurance Co.*, (Sup.) 6 N. Y. Supp. 374. We hold now, as we held then, in accordance with the rules stated by Greenleaf on Evidence, (section 40,) that there is a presumption of law that a letter or other paper, duly directed and mailed, was received in regular course of the mail. There is in the case, under its present presentation, nothing to weaken the force of this presumption. That reasonable presumption, established by the court, as it may be said, through the absolute necessities of business, was sufficient to throw upon the plaintiff the duty of proving that the communication was not absolutely received by the assured,—a burden which was not successfully undertaken by him on the trial. Under this letter, whatever view may be taken of the case in its other branches, and whatever may have been the oral arrangement between the secretary of the company and the assured, existing prior thereto, it was the duty of the assured to pay the past-due premiums under the direct invitation extended to him to inform the company if he desired to restore the policy in force. Had the assured taken any steps, either to pay up the past-due premiums, or otherwise to restore the policy, the company, under the invitation contained in this letter, would have waived the forfeiture, and, by accepting the payment of the past-due premiums, continued in force the contract between the parties. But no attention was paid to the defendant's communication. This fact shows that it was, undoubtedly, the deliberate purpose of the assured to throw up the policy, as he had often threatened theretofore to do.

The second ground upon which the order granting to the plaintiff a new trial should be reversed, and the verdict upheld, is that the conversation testified to by Bartholomew as taking place between the secretary of the defendant and the assured did not constitute a waiver of the condition of the policy requiring prepayment of premiums. The interview in question was had in the state of Pennsylvania, where the secretary had gone from the home office, which was in the city of New York, for the purpose of making a periodical visit to the company's agents, and of looking generally after the affairs of the company. Not only was there not any agreement in writing varying the terms of the policy, but no notification of such arrangement, as testified to by Bartholomew, was made by any person to any general agent or officer of the defendant. As we said upon the former appeal, (6 N. Y. Supp. 374,) in this respect the case differs from that of *Dilleber* v. *Insurance Co.*, 76 N. Y. 567, where the court held substantially to the rule as enunciated by Bliss on Life Insurance, (section 275,) as follows: "The company will be bound by the acts of its president and secretary, performed in its office, whether such acts are in writing or verbal, whether they make a contract, waive a forfeiture, or give a consent." The exercise of corporate powers by an individual officer or agent of the company, when done at other places than at the business office of the company, ought not to be deemed of the binding force and effect as when performed at a place where the company is conclusively presumed to be present, and necessarily charged with knowledge of the acts of all of its general officers. If the acts of such an officer while traveling

abroad on a visit to the agencies of the company, and without actual power or instruction to vary the terms of written contracts, are to be deemed valid, would they not be equally valid if done while he was visiting such localities for the purpose of pleasure only? If the arrangement is made by the president or secretary, whose chief occupation is presumably at the general office of the company, the direction to the book-keeper or clerks to enter such modification of the contract may be readily given, entered, and preserved. I think that judicial complaisance to the violation of written contracts went to its full limit in the rule stated by Bliss, and adopted by the court of appeals in the case cited, and should not be extended further. If either of the foregoing propositions is correct, the order granting to the plaintiff a new trial was erroneous, and should be reversed.

But the learned counsel for the plaintiff made upon the oral argument a point not contained in his brief, to the effect that, in any event, the plaintiff was entitled to some relief, upon the ground that the payments already made would, under the reserve provisions of the policy, have procured a paid-up policy in the sum of $210. But no such question as this arose upon the trial, or is contained in the case, beyond the fact that a witness did say, apparently incidentally, that, from the experience tables used in this state by life insurance companies generally, the value of the policy at the time stated was actually $64.10, and that that amount would have procured a paid-up policy of about the sum of $210. The case, however, is devoid of any evidence to show that the payments already made, instead of being forfeited to the company, were to be applied in this manner by any agreement of the parties, or that the assured did any act necessary to effect that result; and hence the point does not seem to us to be well taken. Order granting a new trial reversed, with costs, and judgment ordered for the defendant on the verdict. All concur.