Argued January 19, affirmed April 25, rehearing denied May 16, 1916.

FRENCH v. COLUMBIA LIFE & TRUST CO.

(156 Pac. 1042; 156 Pac. 1058.)

Insurance—Nonpayment of Premiums—Extension Note.

1. Where, after nonpayment of a premium when due and giving by insured of a note for same, which provided that if not paid when due the policy should lapse and the note should be due in an amount to cover only the *pro rata* premium to the date of cancellation, and the note was not paid when due, the policy lapsed.

[As to estoppel of life insurance company by declaring forfeiture to claim lapse of policy for nonpayment of premium, see note in Ann. Cas. 1916A, 541.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc. Statement by MR. JUSTICE HARRIS.

Elizabeth French is prosecuting this action in an attempt to recover on two life insurance policies which had been issued to her husband, James M. French, now deceased, by Columbia Life & Trust Company, a life insurance company. The first policy is dated March 11, 1912. The insured is James M. French. The beneficiary is Elizabeth French, and the amount of the annual premium is $170.13 payable for the period of 20 years on March 11th each year, with a grace of 31 days allowed for the payment of premiums. A copy of the application for insurance is attached to the policy, and shows that the insured agreed that:

"This application together with the policy which may be issued, shall constitute the contract between me and the company."

By the terms of the policy the insurer agrees to pay $2,500 to the beneficiary "less any indebtedness hereon to the company, and any unpaid portion of the premium for the then current year." The policy reaffirms the statement appearing in the application by declaring that "this policy and the application therefor shall constitute the entire contract between the parties." Other stipulations found in the policy and material to this discussion are here quoted:

"No premium after the first shall be considered paid unless a receipt shall be given therefor, signed by the president, a vice-president, or secretary, and countersigned by an agent authorized to receive such premium, nor shall any premium payment have the effect to continue this policy in force longer than for the period covered by such payment, except as otherwise provided herein. Agents are not authorized to make, alter or discharge contracts, or to waive forfeitures, or to waive or postpone payment of premiums."

On May 24, 1912, the defendant issued to James M. French a second policy, which was identical with the first, except that the May policy named Irene C. French, a daughter of the insured, as the beneficiary, and the annual premiums are made payable on May 24th. The defendant concedes that the premiums on both policies were paid the first year, although the payments were made by giving two notes each being for $170.13, the amount of the initial premiums. The note given for the premium on the March policy was ultimately paid in money, but only $62.50 was paid on the note covering the first premium on the May policy. The giving of the notes for the first permiums on the

two policies is of no importance, except that the note on the May policy is one of the "several notes" referred to in a letter sent to the insured on November 12, 1913, by the company.

The insured was not able to pay the second premium on the March policy. French represented to the company that he had considerable funds coming due in July, and that if an extension could be granted for the payment of the initial premium note on the March policy "and the new premium falling due, he could take care of all of it at that time," and afterward on April 10, 1913, before the expiration of the 31 days of grace, he signed and gave to the company a writing, which will be called a note, because the parties themselves have so designated it, reading thus:

"$170.13.          Portland, Oregon, April 10, 1913.

"On the 15 day of July, 1913, without grace, for value received, I promise to pay to the order of Columbia Life & Trust Company, at its office in the city of Portland, Oregon, one hundred seventy and 13/100 dollars, in U. S. gold coin, with interest thereon in like gold coin at the rate of six (6) per cent per annum, from the 11th day of March, 1913, until paid.

"This note is given on account of the renewal premium for the period of 12 months ending on the 11th day of March, 1914, on policy No. 6551 issued to me by said Columbia Life & Trust Company.

"If this note is not paid, principal and interest, at the maturity thereof, said policy shall thereupon and on the 15th day of July, 1913, without notice or other action by said Columbia Life & Trust Company, lapse and become of no further force or effect; and thereupon this note shall, without notice or other action by said Columbia Life & Trust Company, immediately become due and payable, to the extent of so much thereof as may be required to cover the *pro rata* premium of the insurance under said policy to the date of such cancellation thereof."

Not being able to liquidate the second premium on the May policy, falling due on May 24, 1913, the insured, within the grace period, executed a note which contained the same terms as the quoted note given for the second premium on the March policy, except that the note for the May policy is dated June 24, 1913, and provides for a reasonable attorney's fee in case suit or action is instituted to collect the note or any portion thereof. The company acknowledged the receipt of the note for the May policy by giving or sending to the insured a form letter dated June 24, 1913, which opens by stating that:

"We are in receipt of your valued remittance, in payment of the premium on your policy, and have the pleasure of handing you the official receipt herewith."

While it does not definitely appear that the insured received a similar letter when he executed the note for the renewal premium on the March policy, yet he may have received such a letter because it was a form letter used by the company. When the note dated April 10, 1913, was delivered to the company, it in turn delivered or mailed to the insured a receipt for "the annual premium due March 11, 1913, as per statement in the margin hereof, on policy No. 6551, insuring the life of James M. French." The statement in the margin reads: "Premium for one year, $170.13, subject to note given in payment hereof." The receipt for the renewal premium note on the May policy is not worded like the receipt for the renewal premium note on the March policy. The second receipt reads thus:

"Received from the owner of policy No. 6579 the annual premium of $170.13 due on the 24th day of May, 1913. Given in accordance with note dated June 24th, 1913."

When the company issued the March policy an entry was made on a card, used for that purpose, showing the name of the insured, the date, amount, plan and number of the policy, the amount of the annual premium, the name of the agent writing the insurance together with the amount of his commission; and after the general heading "Premium Payments," but under the subheadings, "Yr/Date/Amount," on a line made for the initial premium, the company wrote the date and amount of that payment. No additional entries were made on the card until April 10, 1913, when the note of that date was executed. On the line prepared for the second annual premium payment in the columns headed "Yr/Date/Amount" the company wrote "4–10–13 170 13." On the back of the card are ruled lines and columns which are headed thus:

"Premium Loans.

| Dr. | | | | Cr. |
| --- | --- | --- | --- | --- |
| Date. | Amount. | Date. | | Amount. |
| | | | | |

On the "Dr." side, and under the heading "Date," the company wrote "4–10–13," and beneath the heading "Amount" was entered "170 13." At the same time an entry was made in the premium journal thus:

"Policy No. 6551, twenty year endowment, $2,500.00, second year annual payment $170.13, March 11, entered on the 10th day of April. J. M. French. Premium note entered under renewal premium, pure 163.67, load 6.56."

After the issuance of the May policy as well as when the note of June 24, 1913, was given on account of the

May policy, entries were made on a card and in the premium journal, as was done in the case of the March policy, and the note given on account of the renewal premium on the March policy.   On November 12, 1913, the insured received a letter from the defendant, which is here quoted in full:

"We hold several notes signed by you, which are long past due.

"Your policy #6551 lapsed because of nonpayment of the note given for the premium on July 15, 1913.

"Your policy #6579 lapsed for nonpayment of your note given to cover the premium on same on July 24, 1913.

"The policies may be reinstated provided you are in good health by the furnishing of a health certificate and by paying up the premiums.   In fact, if you will make a substantial payment on account of the notes which we hold, we will be willing to accept a new note in payment of the balance; but, whether you reinstate the policies or not, we must require at least a substantial cash payment from you at this time.   These matters have dragged so long that we are not willing to permit them to run longer unless there is a substantial payment made by you."

On November 29, 1913, on the back of the card on the "Cr." side of "Premium Loans," under the heading "Date," was written "11–29–13 ch. off," and under the heading "Amount" was entered "170 13."

James M. French, the insured, died on December 19, 1913.   No payments were ever made by him on either of the two notes given in 1913.   On February 21, 1914, a clerk in the office of defendant mailed a letter addressed to James M. French saying:

"You are hereby notified that on policy No. 6551 the annual premium of $170.13 will fall due the 11th day of March, 1914.   Prompt payment is important and

may be made personally or by bank draft, check or money order.''

On March 4, 1914, the company prepared a statement showing that the estate of James M. French was indebted to the company for $107.63 balance of the principal due on the note dated July 22, 1912, $58.59 the earned portion of the note dated April 10, 1913, and $28.35 as the earned part of the note dated June 24, 1913.    Irene C. French assigned her interest in the May policy to her mother, Elizabeth French, who then commenced this action to recover the amount of the two policies.    After all the evidence for plaintiff had been offered and after the defendant had introduced its evidence and rested, the court directed a verdict for the company on its motion; and the plaintiff then appealed from the consequent judgment.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Guy C. H. Corliss.*

For respondent there was a brief over the names of *Messrs. Wood, Montague & Hunt* and *Mr. Prescott W. Cookingham,* with oral arguments by *Mr. Richard W. Montague* and *Mr. Cookingham.*

MR. JUSTICE HARRIS delivered the opinion of the court.

While neither party contends that the notes given in 1913 are invalidated in their entirety by Section 4632, L. O. L., yet, before discussing the arguments advanced by the litigants, it will be necessary to determine whether the notes are affected by that statute, which reads thus:

"No life insurance company or any of its representatives doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount of payment of premiums or rates charged for any of its policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or any representative thereof make any contract of insurance, or agreement as to such contract, other than as plainly expressed in the policy issued thereon; nor shall any such company or representative pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement not specified in the policy contract of insurance. Every officer or agent of any such corporation who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor and shall be fined in any sum not exceeding $500 or imprisoned in the county jail not exceeding six months or both at the discretion of the court, with revocation of his license to do business in this state."

It is plain that the primary object of the quoted legislation is to prevent discrimination, and indeed convincing evidence of that purpose is found in the statute as passed by the legislature and as codified in Lord's Oregon Laws, for the original act is entitled an act to amend Section 3722, B. & C. Code, and "to define life insurance companies, to declare what companies are subject to this act, to provide for valuation of policies and to prevent discrimination and prescribe penalties for the same * * "; and, furthermore, the quoted section is headed, not only in the Code, but in the original act as well, by the words: "To Prevent Discrimination."

It is conceded that both policies would have lapsed
if the insured had not executed the two notes in 1913;
and therefore, if the plaintiff can recover at all, that
right exists only because the notes were executed.
Elizabeth French must stand upon the notes or fall
with them.   One note stipulates that the March policy
shall "lapse and become of no further force or effect"
on July 15, 1913, if James M. French fails to pay, on
or before that date, the full amount of the note; and
the other note provides for the termination of the May
policy if the insured fails to pay the full amount of
such note on July 24, 1913.   If the stipulations for the
termination of the policies appearing in the notes vio-
late Section 4632, L. O. L., then the instruments are
*invalidated in their entirety*, especially when it ap-
pears on the face of the writings that those stipula-
tions are of the very essence of the instruments.   If
the statute bans the stipulation for the lapsing of the
policy because the stipulation is not attached to and
made a part of the policy itself, then the whole note
becomes lifeless, and the plaintiff cannot recover.   Al-
though a situation might arise where the court would
enforce a contract made in violation of a statute, as
was done in *Rideout* v. *Mars,* 99 Miss. 199 (54 South.
801, Ann. Cas. 1913D, 770, 35 L. R. A. (N. S.) 485),
still, under the circumstances presented here, there is
no force in the argument that the court should cleanse
the note by removing the impurities with the judicial
knife, and then vouch for the success of the operation
by declaring that life remains in the mutilated rem-
nant.   If the words, "nor shall any such company or
any representative thereof make any contract of in-
surance, or agreement as to such contract, other than
as plainly expressed in the policy issued thereon,"
found in the statute, apply to one of the principal pro-

visions of the notes, then it must follow that the notes in controversy are wholly vitiated: *Guaranty Trust Co.* v. *Dinwiddie,* 79 Or. 653 (156 Pac. 279); *Fidelity Mut. Life Ins. Co.* v. *Price,* 117 Ky. 25 (77 S. W. 384).

Section 4632, L. O. L., is almost a literal exemplification of Section 656, Kentucky Statutes of 1899, and it is therefore fair to assume that the Kentucky statute, or one just like it, served as the model for our statute. In *Fidelity Mut. Life Ins. Co.* v. *Price,* 117 Ky. 25 (77 S. W. 384), the company, on April 22, 1896, issued a policy on the life of George T. Price in consideration of $217.80 and the annual payment of a like sum. Not being able to pay a renewal premium, the insured executed his note, on April 22, 1900, which was made payable on August 22, 1900. Price was not able to pay the full amount of the note, and before it matured he paid the company $50 and gave a new note for the balance of the premium, payable November 20, 1900. The note provided that if it was not paid at maturity, the policy "for which it is given shall be null and void, without notice to the maker thereof, and without any act on the part of the company, and shall remain so until restored by its terms." The insured failed to pay the note and died on December 10, 1900. The beneficiary sought to recover on the policy. The court held that by receiving the note the company simply agreed to postpone the payment of the premium for four months, and that it would not exercise its rights of forfeiture for that period; and, when speaking of the statute which provides that no insurance company "shall make any contract of insurance or agreement as to such contract other than is plainly expressed in the policy issued thereon," the court said:

"This clause evidently is not applicable to the facts of this case. It relates to .the time the policy was issued. If it had the effect, as contended by counsel, that the note was void and likewise its provisions, because it was not attached to the policy, the appellee could not get any benefit from the execution of the note. If it was void because it was not attached to the policy, its terms would not be binding on either party. The logic of counsel's position would be that, as there was no valid agreement between the parties as to the extension of time for the payment of the premium, the policy was forfeited on the 20th of November, 1900, and the insured was never relieved from the forfeiture. If the contract was void, then the court would not uphold the part that was beneficial to the insured, to wit, the extension of time for the exercise of the right of forfeiture, and deny the company the right to insist upon the forfeiture upon the failure to perform that part of the contract which induced the company to extend the time for declaring the forfeiture."

The doctrine was reaffirmed: *New York Life Ins. Co.* v. *Meinken's Admr.* (Ky.), 81 S. W. 239; *Citizens' Ins. Co. of Missouri* v. *Henderson Elevator Co.*, 123 Ky. 478 (96 S. W. 601, 97 S. W. 810). The construction placed upon the Kentucky statute is especially significant when considered in the light of *Provident Sav. Life Assur. Soc.* v. *Puryear's Admr.*, 109 Ky. 381 (59 S. W. 15), where it was held that the statute means "that the entire contract of insurance is to be plainly expressed in the policy," and that:

"The requirement that the whole contract as to life insurance should be set out in the policy was aimed, not only to prevent discriminations and rebates, but all the evils growing out of uncertainty in these contracts, and the imposition which otherwise might be practiced. * * The purpose of the legislature was that the assured might know from his policy what his contract was, and that contracts not contained in the

policy, or written upon the back of it or attached to it, should not be considered, in order to avoid imposition by agents eager to earn commissions, and to avoid the litigation incident thereto after the death of the assured, when his tongue had been forever silenced, and any explanation he might have made could not be told."

Assuming that our statute had its origin in the Kentucky legislation, then it follows that we also adopted the construction put upon that legislation by the courts of Kentucky, and, applying the judicial construction of that state, the notes are not prohibited by Section 4632, L. O. L., and, moreover, the giving of the notes did not contravene the expressed purpose of the statute, because the payments to be made by the insured were not reduced in amount or rates, and no discrimination was worked out by the notes.

The execution of the renewal premium notes with the provision for the termination of the policies did not constitute an agreement to waive the right of forfeiture nor relieve the insured from the obligation to pay. The parties simply agreed to postpone the time for the payment of a single premium, and that during the extension period the insurer would not exercise its right of forfeiture. As was said in *Occidental Life Ins. Co.* v. *Jacobson*, 15 Ariz. 242 (137 Pac. 869):

"Where a forfeiture for the nonpayment of premium notes is provided for, either in the policy or the note, and the facts do not show any subsequent agreement or conduct which amount to a waiver of such provision by the insurer, the giving of the note must be regarded as merely postponing the time for the payment, and not as a payment of the premium."

Our statute is also similar to legislation enacted in the states of Massachusetts, New York, Mississippi and Texas: Section 68, c. 118, Rev. Laws Mass. 1902;

Section 89, c. 28, Consol. Laws New York 1909; Section 2600, Miss. Code 1906; *Rideout* v. *Mars,* 99 Miss. 199 (54 South. 801, Ann. Cas. 1913B, 770, 35 L. R. A. (N. S.) 485; Art. 4954, Rev. Stats. Tex. 1911. Referring to the Texas statute it was held in *Amarillo Mut. Life Ins. Co.* v. *Brown* (Tex. Civ. App.), 166 S. W. 658, 666:

"We are not prone to believe that the provisions of the statutes were intended to prevent an extension of credit, where insurance companies thought it expedient to do so, in payment of premiums for such contracts. * * We are not inclined to think that these statutes contemplated a well-known method pursued by insurance companies was to be prohibited to them in the conduct of their business."

Most of the adjudications coming to our notice, when speaking of the statute, either concede or expressly hold that the legislation was not designed to prevent the making of notes like the ones involved here. The expressed purpose of the statute itself, the judicial construction given to a statute which appears to have served as the model for our legislation, and the references of other courts to similar laws, all combine to support the conclusion that Section 4632, L. O. L., does not prohibit the notes given in 1913. The policies declare that "agents are not authorized to make, alter or discharge contracts, or to waive forfeitures, or to waive or postpone payment of premiums"; and it has been argued that this provision in the policies affects the notes and also the claims of waiver. The persons who represented the company when the notes were accepted were more than mere agents to secure insurance. One was the secretary and actuary of the company, and S. P. Lockwood was vice-president and "general manager of the company's business in all departments." Both were also directors. Neither

was a mere titular officer, but both were active and real representatives of the company. The notes were received by the defendant and were entered upon its books. The company demanded payment of the earned portion of the notes; and, moreover, the insurer has never contended, and does not now urge, that its officers were without authority to receive the notes; nor does the defendant even suggest that any act done, or alleged to have been done, by either Johnson or Lockwood was beyond the scope of his authority. The situation is not at all analogous to cases like *Wilson* v. *Investment Company,* 80 Or. 233 (156 Pac. 249), where nothing more is shown than the single fact that a person is the president of a corporation. The company cannot disavow the notes because the negotiations were conducted by Johnson and Lockwood, or either of them; nor can the defendant avoid the consequences of a waiver if the acts of the secretary or general manager are sufficient to effect a waiver: *Amarillo Mut. Life Ins. Co.* v. *Brown* (Tex. Civ. App.), 166 S. W. 658. Having concluded that the notes are not prohibited by Section 4632, L. O. L., and that the corporation is bound by the acts of its representatives Johnson and Lockwood, attention will now be directed to the contentions made by the litigants.

The defendant alleges that both policies had lapsed before James M. French died. The company argues that by the express terms of the notes the policies terminated in July, 1913, for the reason that the insured failed to pay the notes when they matured. The position taken by the defendant is assailed by the plaintiff from four different angles: (1) She claims that the premiums were paid by the execution of the notes; (2) she argues that the provisions for the forfeiture of the policies, found in the notes, create new contracts which do not bind the beneficiaries because not assented to

by them; (3) she insists that the company waived its right to claim a forfeiture; and (4) she asserts that the insurer agreed to extend the time for payment of the notes.

In support of the allegation of payment the plaintiff claims that since the insured owed no pre-existing debt, the mere fact that he executed the notes raises a presumption that they were given in payment of the premiums, and that therefore the notes must necessarily be regarded as payments, unless the parties expressly agreed to the contrary; that the letter of June 24, 1913, conclusively shows payment; and that the letter of November 12, 1913, confirms this theory. When the insured signed the note dated April 10, 1913, he received the official receipt already mentioned, and it will be assumed that he also received a letter like the one dated June 24, 1913, although it is not certain that he received any letter concerning the April note. Assuming, however, that he did receive a letter, the transaction would involve the note, the receipt and the letter. The note explains that it is given on account of the renewal premium, and it expressly states that failure to pay the full sum of $170.13 on July 15, 1913, will cause the policy to lapse on that day and immediately make the note payable "to the extent of so much thereof as may be required to cover the *pro rata* premium" to the date of the cancellation of the policy. The note only obligates him to pay the *pro rata* part of $170.13 up to July 15, 1913. It is true that the writing says that the maker promises to pay $170.13, but it is also true that the note nowhere states that the full sum of $170.13 shall, at any time, "become due and payable." The maker has the option of paying the full sum, but he is not obliged to pay the whole amount, and the only penalty for

failure to pay $170.13, is the lapsing of the policy and an obligation to pay a *pro rata* part of the note. The receipt contains an interlineation couched in this unambiguous language: "Subject to note given in payment hereof"; and this is the receipt mentioned in the letter if one was written in April, 1913. The note dated June 24, 1913, except as to the attorneys' fees, was like the April note. The interlineation in the receipt reads that it is "given in accordance with the note dated June 24, 1913"; and the letter of that date acknowledges the remittance. In each instance, the note, receipt and letter must be considered together; and, when so viewed, it is impossible to strain or warp or even torture the language into an admission that the premium has been paid. Nor does the letter of November 12, 1913, even tend in the slightest degree to show that the company received the notes as payments of the premiums. At that time the company owned three notes signed by the insured, and upon each of which money was due. The note dated July 22, 1912, and given in payment of the initial premium on the May policy, was wholly due except a payment of $62.50 made on June 11, 1913, a *pro rata* portion of the April 10, 1913, note was due and a proportionate part of the June 24, 1913, note was likewise due, and therefore the company correctly advised the maker of those notes when it said that "we hold several notes signed by you, which are long past due." In that letter the defendant says that the policies both lapsed because the notes were not paid, and then the insured is informed that "the policies may be reinstated provided you are in good health by the furnishing of a health certificate and by paying up the premium." Every statement contained in this letter is consistent with the contention of the company that it was only

asserting that a *pro rata* part was due on the 1913 notes; and, moreover, not a single sentence or phrase can be found in the writing which even intimates that the company regarded the notes as payment of the renewal premiums. All the writings which were made at the time the 1913 notes were executed demonstrate, when considered together, that the parties did not regard the delivery of the notes as payment of the premiums.

The plaintiff argues that the beneficiaries "have the right to insist that their policies shall not be forfeited, except as prescribed by the terms of the policies themselves." The policies did not contain any agreement for a forfeiture in case of failure to pay a premium note, and the contention is that the beneficiary is not bound by a forfeiture clause appearing in the notes. The language employed in *Fidelity Life Ins. Co.* v. *Price,* 117 Ky. 25 (77 S. W. 389), completely answers the plaintiff:

"The parties had the same right to agree to the extension of the time for the payment of the premium and the setting forward of the time of forfeiture as they had to enter into the original contract of insurance. The beneficiary named in the policy had no vested rights in it, because it is expressly provided therein that the insured may change the beneficiary by the surrender of the policy. Besides, under the express terms of the policy, if the beneficiary was not changed, she did not have any rights under it, unless the premiums were actually paid."

If the plaintiff has any rights at all, they are preserved by the notes, and, unless waived, the same provisions which preserve those rights also measure them. It makes no difference whether the policy or the note alone contains the provision for the forfeiture of the policy if the premium note is not paid; in either event

the giving of the note is regarded only as a postpone-
ment of the time for payment and not as a payment
of the premium; and, unless a forfeiture is prevented
by a waiver, or is otherwise defeated, a failure to
comply with the terms of the notes will terminate the
policy: *Occidental Life Ins. Co.* v. *Jacobson,* 15 Ariz.
242 (137 Pac. 869,. 870); *Security Life & Annuity Co.*
v. *Underwood* (Tex. Civ. App.), 150 S. W. 293; *Ressler*
v. *Fidelity Mut. Life Ins. Co.,* 110 Tenn. 411 (75 S. W.
735); *Fidelity Mut. Life Ins. Co.* v. *Price,* 117 Ky. 25
(77 S. W. 384); *Sharpe* v. *New York Life Ins. Co.,* 5
Neb. (Unof.) 278 (98 N. W. 66); *Banholzer* v. *New
York Life Ins. Co.,* 74 Minn. 387 (77 N. W. 295, 78
N. W. 244).

The question of waiver and the claim that the com-
pany agreed to extend the time for the payment of
the two 1913 notes may be considered together. At
the very outset it must be conceded that forfeitures
are not favored by courts, and that sometimes slight
circumstances will be taken advantage of to avoid a
forfeiture; but it must likewise be admitted that a for-
feiture cannot be prevented unless warranted by evi-
dence.   The contention that there was an agreement
for an extension grows out of the sale of 500 shares
of stock of the Johnson Bradford Safe Company for
$5,000 to one Oswell by E. P. Troeh, who was to re-
ceive a commission for the sale.   Oswell gave two
$2,500 notes, one of which was paid in June, 1913,
and the second was liquidated on November 28, 1913.
James M. French had introduced Troeh to Oswell,
and on that account, when the first note was paid,
Troeh divided his commission by giving $125 to
French, who in turn divided that amount with an-
other, so that French ultimately received only $62.50;
and this is evidently the $62.50 which, on June 11,

1913, was indorsed on the July 22, 1912, note held by the defendant. It is argued that French and the company agreed that when Oswell paid his second note and French received his part of the commission it would be paid to the company, in consideration of which it was understood that the time for the payment of the 1913 notes would be extended. The truth is that Edwin Lindstedt, who was a business associate of French, has claimed that he was entitled to half of the $125 commission; but, even though it be assumed that the whole sum of $125, when paid, would have belonged to James M. French, and that he agreed to pay the $125 to the defendant whenever he received the commission, still it would amount to nothing more than proof that French agreed to pay a debt which he owed in any event. The balance due on the July 22, 1912, note was $107.63; $58.59 was the earned portion of the April 10, 1913, note, and the *pro rata* part of the June 24, 1913, note for the period commencing May 24th of that year and ending on July 24th following was $28.35; and therefore his indebtedness on the three notes held by the company was $194.57, even on the theory that one policy was canceled on July 15, 1913, and the other annulled on July 24th following. If the whole sum of $125 had been paid to the defendant on November 28, 1913, the date when the second Oswell note for $2,500 was paid, French still would have been indebted for premiums previously earned by policies which were then lapsed. It is difficult to understand how an agreement to pay the $125 even tends to show that the insurer stipulated for an extension of time, particularly in the light of the letter of November 12, 1913, where it is expressly stated that the policies had lapsed. The parties agreed in plain language that if the notes were not paid on maturity,

the policies would immediately lapse without notice or other action on the part of the insurer, with the result that the obligation of the signer of the notes was limited to the *pro rata* part of the notes. Proof that the company demanded the earned portions of the notes cannot be considered as evidence of a waiver. If there was any evidence tending to show that the company demanded the payment of the $170.13, the whole amount of the note, or in some way treated the renewal premium notes as obligations for the entire amount of the annual premiums, then there would be some foundation for the claim of a waiver. If, however, the company treated the notes as obligations for the *pro rata* portions, and only demanded the *pro rata* amounts earned on the premiums, and did nothing more, then the claim of waiver falls.

The record may be searched from the beginning to the end, and it will be found that every act of the defendant is in complete harmony with the agreement evidenced by the note. In the case of each policy, the note, the receipt, the letter, the entries on the card and in the premium journal, and the letter of November 12, 1913, speak out in unmistakable terms with all the unwavering certainty of truth, and demonstrate that the parties agreed that the policies would terminate, one on July 15th and the other on July 24th. Both the insurer and the insured treated the policies as lapsed after July 24th; the company only claimed the *pro rata* portions of the 1913 notes, and no demand was made at any time for the full face of the notes, and neither note was, at any time, treated as a binding obligation for the full sum of $170.13. The company did not carry either note as an asset for more than the *pro rata* portion, although the premium journal and the card contained the entries already

mentioned. The notice mailed to James M. French on February 21, 1914, by a clerk of the defendant cannot avail the plaintiff. The notice was mailed in the course of routine business after the death of the addressee, and long after the company knew of the death. Nor does the delay in entering the policies on the books as lapsed aid the plaintiff: *Ashbrook* v. *Phoenix Mut. Ins. Co.,* 94 Mo. 72 (6 S. W. 462).

There is no evidence to support a finding that there was an agreement to extend the time for the payment of the notes, and there is likewise a lack of evidence to sustain the claim of waiver, and therefore the judgment should be affirmed.                    AFFIRMED.

MR. JUSTICE EAKIN absent.

MR. JUSTICE BURNETT delivered the following specially concurring opinion:

This is an action to recover upon two insurance policies, in one of which the plaintiff herself is the beneficiary and in the other the assignee of the beneficiary. The question for decision is the same in both causes of action; hence they will be treated together. The transaction was initiated by the written application of the insured, James M. French, husband of the plaintiff, in which occurs the following clause:

"I hereby agree that the statements herein contained together with the statements made by me to the medical examiner and contained in part two of this application are hereby warranted to be true, full and correct as facts, and that this application together with the policy which may be issued, shall constitute the contract between me and the company."

It is admitted by the pleadings that a policy was issued containing the following matter:

. "This policy shall not take effect until the first premium shall have been actually paid during the good health of the insured. No premium after the first shall be considered paid unless a receipt shall be given therefor, signed by the president, a vice-president, or secretary, and countersigned by an agent authorized to receive such premium, nor shall any premium payment have the effect to continue this policy in force longer than for the period covered by such payment, except as otherwise provided herein. Agents are not authorized to make, alter or discharge contracts, or to waive forfeitures, or to waive or postpone payment of premiums.

"Should default be made in the payment of any premium within three years from the date hereof, this policy shall cease and determine, and, unless reinstated, all payments hereon shall remain the property of the company. The first year's insurance hereunder is term insurance, and shall be valued as such.

"A grace of thirty-one days, during which the policy shall remain in full force, will be allowed in the payment of all premiums, except the first, subject to an interest charge of not to exceed six per cent per annum.''

There is no question about the payment of the initial premium. The dispute arises about the second one due March 11, 1913, and the plaintiff claims that her husband paid it by the delivery to the company of the instrument here quoted:

"$170.13.          Portland, Oregon, April 10, 1913.

"On the 15th day of July, 1913, without grace, for value received, I promise to pay to the order of Columbia Life & Trust Company, at its office, in the city of Portland, Oregon, one hundred seventy and 13/100 dollars in U. S. gold coin, with interest thereon in like gold coin at the rate of six (6) per cent per annum, from the 11th day of March, 1913, until paid.

"This note is given on account of the renewal premium for the period of 12 months ending on the 11th

80 Or.—28

day of March, 1914, on policy No. 6551, issued to me by said Columbia Life & Trust Company.

"If this note is not paid, principal and interest, at the maturity thereof, said policy shall thereupon and on the 15th day of July, 1913, without notice or other action by said Columbia Life & Trust Company, lapse and become of no further force or effect; and thereupon this note shall, without notice or other action by said Columbia Life & Trust Company, immediately become due and payable, to the extent of so much thereof as may be required to cover the *pro rata* premium of the insurance under said policy to the date of such cancellation thereof.

"[Signed]    JAMES M. FRENCH."

She avers that this was received by the company and the following receipt issued therefor:

"Columbia Life & Trust Company,
"Portland, Oregon.
"No. 1695.

"Premium for one year $170.13, subject to note given in payment hereof.

"Premium as above received this 10th day of April, 1913.

"T. H. RICHEY.

"Received the annual premium due March 11, 1913, as per statement in the margin hereof, on policy No. 6551 insuring the life of James M. French. This receipt must be countersigned before delivery by T. H. Richey.

"M. M. JOHNSON,
"Secretary."

For convenience the instrument executed by French and quoted above will be called a note. It is stated by both parties that this so-called note was not paid. Indeed, the plaintiff tenders with her complaint for the first time the full principal and interest thereof. It is alleged by the plaintiff and denied by the defendant that the latter extended the time of payment. The assured died December 19, 1913. The company denied

liability on the policy on the ground that it had lapsed; and the plaintiff, alleging the execution of the various papers mentioned and making the tender noted above, demanded judgment for the balance of the face of the policy, after deducting the amount of the note. After some denials, the substance of the answer is that the note mentioned, so executed and delivered, was not to be payment of the premium then due, but that the defendant agreed to keep the policy of insurance in force until July 15, 1913, and thereafter for the current contract year, provided that the note was paid at maturity, and that afterward, it not having been liquidated, the company notified the assured that his policy had lapsed. The reply quotes some correspondence with the officers of the defendant and makes some denials of the new matter in the answer. The result of a jury trial was a directed verdict for the defendant, upon which a judgment was rendered in its favor, and the plaintiff appeals.

From the complaint it is manifest that the assured did not fulfill the terms of the policy, and that if the plaintiff would prevail in this litigation, she must prove something else as the ground of her recovery. Although she is a beneficiary, she cannot take more than her husband provided for her by his contract of insurance and other transactions with the defendant. During the life of the policy she had interest enough therein as beneficiary to keep the insurance in force by paying the premium; but, in the present juncture, in the absence of any action on her part, her rights cannot arise above their source, namely, the action of her husband. As stated in the complaint, the defendant is a corporation organized under the laws of the State of Oregon. It is said in Section 6691, L. O. L., that:

"From the first meeting of the directors, the powers vested in the corporation are exercised by them, or by their officers or agents under their direction, except as otherwise specially provided in this chapter."

It is not pretended anywhere in the pleadings or evidence that any action whatever was taken by the directors in relation to the matter in question. In law, the board is the person of the corporation, and the authority of agents and officers must be traced to and be shown to originate in its action. On the face of the documents offered in evidence, as well as by the testimony, all the transactions took place with agents of the company. It is a well-settled principle that one dealing with the agent of another does so at his own peril, and that it is incumbent upon him to prove, either the actual authority of the representative, or that the latter acted within the apparent sanction given him by his supposed principal. The phase of acting within the ostensible authority of the agent disappears, and cannot affect the case in the face of actual knowledge on the part of one seeking to charge the corporation that the agent was without authority to do the act upon which the moving party relies: *Roberts* v. *Lombard,* 78 Or. 100 (152 Pac. 499); *City of Portland* v. *American Surety Co.,* 79 Or. 38 (153 Pac. 786). The insured stipulated by his application that it, together with the policy to be issued, should constitute the contract between himself and the company. He accepted the policy upon which the plaintiff relies and which contains this clause:

"Agents are not authorized to make, alter or discharge contracts, or to waive forfeitures, or to waive or postpone payment of premiums."

Above all this, Section 4632, L. O. L., referring to life insurance companies, says:

"No life insurance company or any of its representatives doing business in this state shall make or permit any distinction or discrimination in favor of individuals between insurants of the same class and equal expectation of life in the amount of payment of premiums or rates charged for any of its policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or any representative thereof make any contract of insurance, or agreement as to such contract, other than as plainly expressed in the policy issued thereon; nor shall any such company or representative pay or allow, or offer to pay or allow, as inducement to insurance, any rebate of premiums payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement not specified in the policy contract of insurance. Every officer or agent of any such corporation who shall violate any of the provisions of this section shall be deemed guilty of a misdemeanor and shall be fined in any sum not exceeding $500 or imprisoned in the county jail not exceeding six months or both at the discretion of the court, with revocation of his license to do business in this state."

The note mentioned was plainly an agreement as to the contract of insurance other than that expressed in the policy. The insured was charged with the knowledge of this law forbidding such a stipulation. By the terms of his own contract, he knew that no agent had any power to alter, discharge or waive any provision of the policy. There is nothing whatever in that instrument authorizing the acceptance of anything except money in settlement of the premiums, and it is plainly said that if default should be made in such payments within three years from the date of the policy, it should cease and determine. The law and the words of the contract of insurance could not

be plainer, and both concur in condemnation of such a compact. The plaintiff is compelled to rely upon a contract evidenced by the so-called note, which she knew by the terms of the policy and by the statute the agents with whom she dealt had no authority whatever to make. Under these circumstances, disclosed by the record without dispute, the matter of apparent authority does not arise in this case, and the transaction outside of the policy give the plaintiff no ground of recovery.

The scope of this statute and the reason of the rule it establishes is wider than the contention between the immediate parties before us. It declares a principle of public policy in this state regulating all life insurance, and putting that business on a sound financial basis. Like laws governing banks and other moneyed institutions, it aims to weed out unsound insurance. It is in the interest of not only any particular individual, but also of the general public, and it is in that light that the statute must be construed. It is on a parity with the provisions requiring such concerns to invest their capital in certain kinds of securities as in Section 4610, L. O. L., or compelling them to specify in their policies the amount and manner of payment of benefits as stated by Section 4629. The section under consideration specifically forbids distinction or discrimination in any of the terms and conditions of the stipulations an insurer makes. It goes further, and requires all the contract of insurance to be plainly "expressed in the policy," and under criminal penalty explicitly interdicts any other "agreement as to such contract." The original policy requires actual payment of a money premium in default of which the insurance lapses. Jones and Brown, insuring with the company, have thus liquidated the required fee for

their insurance, yet the plaintiff here would enforce a discrimination in her favor to the extent of making an unfulfilled collateral agreement a substitute for payment, all in defiance of the law prohibiting that very thing.

It is argued that the policy does not state that it shall be forfeited for default in meeting a premium note at maturity. With equal force it may be said that it is not provided in the policy that any such instrument as the plaintiff relies upon shall be accepted as payment of a premium. The contract is equally obligatory upon both parties to it, and under the plain mandate of the law each of them must find relief only in the terms of the original policy. Upon the collection of premiums alone can any insurance institution expect to pay its obligations or do business at all without impairment of its capital and ultimate insolvency. The matter involved is not altogether the case of the French insurance. It affects everyone holding a policy in the defendant company. If would-be beneficiaries can force upon it dishonored paper as payment, or if it, however willing, may be permitted even to accept such a substitute, other policies it has issued will be impaired. The application of the doctrine for which the plaintiff contends will depreciate the value of every policy in this state, notwithstanding the careful legislation designed to strengthen insurance. Once the door is open to such a notion, the security of the frugal policy-holder who pays will be frittered away and wildcat insurance will be enthroned. While it may not be unlawful to insure people on the basis of taking notes for overdue premiums, yet the command of the law is that provisions to that end must be incorporated in the policy, so that those who contract for insurance may know in advance that the company

proposes to do a credit business, and thus more certainly estimate its reliability as a financial institution. In the absence of anything in the policy permitting such a substitute for payment as the one here put forward, it was the duty of the court *sua sponte* to decline to enforce it, as in a case where any other unlawful stipulation is presented for judicial sanction.

Passing this for the moment, it is well settled that a note is not payment unless there is an agreement that it should be so accepted: *Black* v. *Sippy,* 15 Or. 574 (16 Pac. 418) ; *Johnston* v. *Barrills,* 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717) ; *Schreyer* v. *Turner Flouring Co.,* 29 Or. 1 (43 Pac. 719) ; *Kiernan* v. *Kratz,* 42 Or. 474 (69 Pac. 1027, 70 Pac. 506) ; *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447 (75 Pac. 822). It is contended, however, that the assured was under no obligation to pay any premium, and hence that he was not compelled to give the note. If anything, this proves too much, for if the defendant had undertaken to collect the note from him by action at its maturity, he could have defended against it for at least partial failure of consideration. But we are not left without evidence of the intent of the parties in the execution and reception of the note. They themselves put into that instrument the conditions governing their stipulation, conceding that authority existed for making the same. It is plainly written there that:

"If this note is not paid, principal and interest, at the maturity thereof, said policy shall thereupon and on the 15th day of July, 1913, without notice or other action by said Columbia Life & Trust Company, lapse and become of no further force or effect."

It is true by the terms of that instrument the company retained the right to collect the *pro rata* premium to the date of cancellation, but even this clause signed

by the assured contemplates that the policy should then and there terminate. That reservation refers only to the premium earned by the company on the insurance up to the date of the cancellation of the policy. The receipt mentioned imparts no vitality to the plaintiff's case, for it refers to the note, and the two must be construed together.

The plaintiff must rely on the so-called note if she recovers at all. She cannot take the part favorable to her and ignore the other conditions therein expressed. That instrument either affected the policy or it did not. If not, it is conceded that she has no standing in court; for the only pretense of compliance with the contract of insurance must be worked out through the note. If the policy was affected by it in respect to payment of the premium or otherwise, it must be according to all the conditions of the note, and not by part of them to the exclusion of others. It is primary learning that one who would rely upon an executory contract must allege and prove compliance with it on his part, and confessedly there was no semblance of performance of what was to be done by the assured under the terms of the note. *Arnold* v. *Empire etc. Life Ins. Co.,* 3 Ga. App. 685 (60 S. E. 470), is a precedent cited and strongly relied upon by the plaintiff. It is distinguishable from the instant case by the fact that the company credited on the notes dividends earned by the policy. Expressly upon that feature the court held that the company was estopped to deny liability. Yet even under those circumstances the opinion contains this language:

"The company might have declared the policy avoided for the nonpayment of the first note at its maturity, and as it might still have held the insured as maker of the note for the proportionate part thereof equal to the portion of the premium for 1903, which

accrued up to the date of the maturity of the note this would not of itself have shown that the company waived its right to forfeit the policy, or that it had not availed itself of that right."

Here the plaintiff herself shows that the defendant occupies exactly the position thus outlined by the Georgia court; and not only so, but she also sets out in her reply the letter of the defendant written to the assured November 12, 1913, distinctly notifying him that his policies had lapsed. How this can be tortured into a waiver passes the most technical special pleading.

Again, in *Arnold* v. *Empire Ins. Co., supra,* there is this excerpt from *Insurance Co.* v. *Eggleston,* 96 U. S. 577, 24 L. Ed. 841:

"Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

The dominant idea in the rule thus stated is that the assured himself, as well as the company, must comply with the new contract or arrangement into which he has been led by the insurer if the latter is to be estopped thereby; for it is elementary that estoppels must be mutually binding upon both parties.

*Summers* v. *Des Moines Ins. Co.,* 116 Iowa, 593 (88 N. W. 326), is cited in opposition to the views here expressed. That case depended upon a peculiar Iowa statute (Code, § 1741), as follows:

"All insurance companies or associations shall, upon the issue or renewal of any policy, attach to such policy, or indorse thereon, a true copy of any applica-

tion or representation of the assured which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy. The omission so to do shall not render the policy invalid, but if any company or association neglects to comply with the requirements of this section it shall be forever precluded from pleading, alleging or proving any such application or representations, or any part thereof, or falsity thereof, or any parts thereof, in any action upon such policy, and the plaintiff in any such action shall not be required, in order to recover against such company or association, either to plead or prove such application or representation, but may do so at his option.''

This enactment is not like ours. It does not forbid the making of any contract relating to the insurance involved. It only prevents the company from pleading or proving such a contract unless it is attached to or indorsed upon the original policy. The case is not in any wise an authority under our statute, which absolutely forbids the making of any agreement concerning insurance outside the policy itself. The same may be said of *Lewis* v. *Insurance Co.,* 71 Iowa, 97 (32 N. W. 190), reported on second appeal in 80 Iowa, 259 (45 N. W. 749), *Provident Sav. Life Assur. Soc.* v. *Puryear,* 109 Ky. 381 (59 S. W. 15), *Considine* v. *Mutual Life Ins. Co.,* 165 Mass. 462 (43 N. E. 201), and *New Era Life Assn.* v. *Musser,* 120 Pa. 384 (14 Atl. 155). They are all illustrative of statutory regulations similar to that of Iowa quoted above. *Bowyer* v. *Continental Casualty Co.,* 72 W. Va. 333 (78 S. E. 1000), enforces a similar statute, to the extent that an application, not copied into or attached to the policy issued upon it, although referred to in the policy as a basis thereof, could not be received in evidence to vary or affect the terms of the contract of insurance itself,

although the court said it would have been admissible at common law for that purpose. Applying the doctrine of that case to the present contention, it is plain that the other party to the contract, the plaintiff here, has no right under our statute to rely upon or offer in evidence an outside agreement to supplement or vary the original policy. It is idle to say that where one party to the policy is forbidden by law to make a contract of a certain kind, the other party to the same convention can make such an agreement and enforce it against the person forbidden to agree to the same. Yet this is the essence of the plaintiff's contention when tested by the statute. It is unthinkable that one party to an agreement may contract one way while the other cannot. *Bank* v. *Hume*, 128 U. S. 195 (32 L. Ed. 370, 9 Sup. Ct. Rep. 41), merely holds, what no one disputes, that the beneficiary has a vested interest in the policy when it is issued of which he cannot be deprived without his consent; and, further, not applicable to his case, that it is not fraud upon his creditors for a husband to insure his own life, making his wife the beneficiary. As supporting the contention of the plaintiff, an excerpt is taken from *Mutual Life Ins. Co.* v. *Kelly,* 114 Fed. 268, 274 (52 C. C. A. 154, 160), to the effect that the wife beneficiary has a certain vested interest in the policy immediately upon its issue. The opinion, however, continues in this language:

"But this well-recognized principle falls far short of sustaining plaintiff's contention in this case. The question still remains, With what rights was she vested? This obviously depends upon the terms and conditions of the contract creating them. The husband assumed to act as her agent in the negotiation of a contract intended to be beneficial to her. He gave a consideration therefor, consisting partly of certain

executory promises. He secured the promise from
the insurance company to pay money to the wife, in
case of his death, by promising that such death should
not, for two years at least, be the result of his own
act, sane or insane. All this was so done as to disclose
a clear intention on the part of both that no risk
against such death should be assumed by the company.
The wife, by asserting a claim on the policy, ratifies
and affirms the contract as made by her agent, and
that, too, subject to all its terms and conditions. She
cannot avail herself of the promise to pay her the
amount of the policy, and simultaneously repudiate
the promise made by her husband, which was given to
the insurer as a consideration for its undertaking.
Neither can she enlarge the obligation of the insurer
beyond the scope of that undertaken by it."

In the instant case the beneficiary herself, the plain-
tiff here, did nothing whatever in the matter involved.
All that was done was performed for her by her hus-
band, upon whose actions alone she must stand or fall.
She is compelled, under the very nature of the case,
to rely upon the so-called note. She cannot take parts
of this instrument which are favorable to herself and
reject the rest of his written stipulation. She must
take the good with the bad if she would act at all.
This principle is stated in *Guaranty Trust Co.* v. *Din-
widdie,* 79 Or. 653 (156 Pac. 279), in Department No.
2 of this court, in which Mr. Chief Justice MOORE and
Justices BEAN, HARRIS and the writer concurred. The
principle is controlling here.

The quintessence of the case is that the plaintiff is
relying upon a contract, not contained in the policy,
which the assured knew the agents had no authority
to make, forbidden, as it was, by the policy itself and
by the statute; and, further, that even this invalid
outside agreement has never been performed by the
assured, nor anyone else on his behalf. No sophistry

can make the fact otherwise, nor dispense with the legal rule that if a party would recover upon a contract, he must show compliance therewith on his own part or legal excuse for not so doing. The plaintiff has not shown this.

The judgment should be affirmed.

MR. JUSTICE BEAN delivered the following dissenting opinion:

This is an action upon two life insurance policies issued by the defendant company upon the life of James M. French for $2,500 each, numbered 6551 and 6579, respectively. Upon the trial of the cause, at the close of all the evidence, the trial court directed a verdict in favor of the defendant. From a judgment thereon plaintiff appeals.

The following is shown by the record: In so far as material to this controversy, policy No. 6551, upon which the first cause of action is based, is, in substance, as follows:

"Columbia Life & Trust Company promises to pay, at the home office of the company, in Portland, Oregon, the sum of twenty-five hundred dollars (less any indebtedness hereon to the company, and any unpaid portion of the premium for the then current policy year), to James M. French, of Portland, county of Multnomah, State of Oregon, herein called the insured, on the eleventh day of March, nineteen hundred and thirty-two, if the insured be then living; or, to make such payment upon receipt at said home office of due proof of the prior death of said insured, to Elizabeth French, his wife, herein called the beneficiary, if said beneficiary be living; otherwise, to the executors, administrators or assigns of the insured, subject to the right of the insured to change the beneficiary, as hereinafter provided.

"This contract of insurance is made in consideration of the application for this policy, a copy of which is

hereto attached, and which application is hereby made a part of this contract, and in consideration of the first annual premium of one hundred seventy and 13/100 dollars, the receipt whereof is hereby acknowledged, for insurance, as herein provided, terminating on the eleventh day of March, 1913, and in consideration of the further payment of one hundred seventy and 13/100 dollars, to be made on or before every eleventh day of March hereafter during the first twenty years of the continuance of this policy.

"This policy shall not take effect until the first premium shall have been actually paid during the good health of the insured. No premium after the first shall be considered paid unless a receipt shall be given therefor, signed by the president, a vice-president, or secretary, and countersigned by an agent authorized to receive such premium, nor shall any premium payment have the effect to continue this policy in force longer than for the period covered by such payment, except as otherwise provided herein. Agents are not authorized to make, alter, or discharge contracts, or to waive forfeitures, or to waive or postpone payment of premiums.

"Should default be made in the payment of any premium within three years from the date hereof, this policy shall cease and determine, and, unless reinstated, all payments hereon shall remain the property of the company. The first year's insurance hereunder is term insurance and shall be valued as such.

"A grace of thirty-one days, during which the policy shall remain in full force, will be allowed in the payment of all premiums, except the first, subject to an interest charge of not to exceed six per cent per annum.

"The mode of premium payment may be changed on any anniversary date, from annual to semi-annual, or quarterly, or *vice versa,* at the premium rates in use by the company at the date hereof.

"In the event of default in the payment of any premium hereon, this policy may be reinstated upon evidence satisfactory to the company of the insurability

of the insured, and by the payment of all past-due premiums, with interest thereon at the rate not to exceed six per cent per annum. The policy reinstated will be subject to any unpaid indebtedness.

"Should there be any error in the statement of the age of the insured, it will be adjusted by the payment of such amount of insurance as the premium actually would have purchased at the correct age.

"This policy and the application therefor shall constitute the entire contract between the parties, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, unless a copy of such statement shall be used in defense to a claim under this policy unless it is contained in the written application therefor.

"This policy shall be incontestable after one year from its date, except for nonpayment of premium.

"The insured, subject to the rights of any assignee, may nominate a beneficiary or beneficiaries, provided none be herein named, or may change the beneficiary or beneficiaries at any time, during the continuance of this policy, by filing with the company a written request accompanied by this policy, such nomination or change to take effect upon the indorsement of same on the policy by the company."

The second annual premium upon the policy became due by the terms thereof on March 11, 1913, and was not paid on that day, but James M. French availed himself of the 31 days of grace, and on April 10, 1913, for the second annual premium of $170.13, executed and delivered to the company his promissory note as follows:

"170.13.          Portland, Oregon, April 10, 1913.

"On the 15th day of July, 1913, without grace, for valued received, I promise to pay to the order of Columbia Life & Trust Company, at its office, in the city of Portland, Oregon, one hundred seventy and 13/100 dollars in U. S. gold coin, with interest thereon in like

gold coin, at the rate of six (6) per cent per annum, from the 11th day of March, 1913, until paid.

"This note is given on account of the renewal premium for the period of 12 months ending on the 11th day of March, 1914, on policy No. 6551, issued to me by said Columbia Life & Trust Company.

"If this note is not paid, principal and interest, at the maturity thereof, said policy shall thereupon and on the 15th day of July, 1913, without notice or other action by said Columbia Life & Trust Company, lapse and become of no further force or effect; and thereupon this note shall, without notice or other action by said Columbia Life & Trust Company, immediately become due and payable, to the extent of so much thereof as may be required to cover the pro rata premium of the insurance under said policy to the date of such cancellation thereof.

"[Signed]   James M. French."

Thereupon defendant executed and delivered to James M. French its receipt, as follows:

"Columbia Life & Trust Company,
"Portland, Oregon.
"No. 1695.

"Premium for one year $170.13, subject to note given in payment hereof.

"Premium as above received this 10th day of April, 1913.

"T. H. Richey.

"Received the annual premium due March 11, 1913, as per statement in the margin hereof, on policy No. 6551, insuring the life of James M. French. This receipt must be countersigned before delivery by T. H. Richey.

"M. M. Johnson,
"Secretary.

"(For terms of mutual agreement see policy.)"

On March 4, 1914, the defendant presented its claim against the estate of French as follows:

80 Or.—29

Portland, Oregon, March 4, 1914.

Estate of J. M. French to Columbia Life & Trust Company, Dr.

| | | |
|---|---:|---:|
| Note due March 1, 1913 ............ | $170 13 | |
| June 11, 1913, paid ............... | 62 50 | |
| | $107 63 | |
| Interest to March 4, 1914 ......... | 7 46 | |
| | | $115 09 |
| Note for premium policy No. 6551 to July 15, 1913 ................. | 58 59 | |
| Interest to March 4, 1914 ......... | 3 46 | |
| | | 62 05 |
| Note for premium policy No. 6579 to July 24, 1913 ................. | 28 35 | |
| Interest to March 4, 1914 ......... | 1 30 | |
| | | 29 65 |
| E. and O. E. | | $206 79 |

The mode of premium payment as originally provided in the policy was never changed to a semi-annual or quarterly payment.

In her complaint plaintiff alleges, *inter alia,* that the note was not paid at maturity, but that James M. French was assured by defendant that he might protect the interests of the beneficiary under the policy by agreeing to apply, upon the amount of notes given for the premiums, a claim held by French against the Johnson-Bradford Safe Company, on account of commissions previously earned by him through the sale of its stock to one Oswell; that the sum of $125 was still due to French for commissions upon the sale of the stock, and that the defendant company, French, and the Johnson-Bradford Safe Company, and one Troeh, who had an interest in the commissions, agreed

that the same should be paid directly by the safe company to the defendant and credited upon the insurance premium due it from French; and, in consideration of French consenting to the application of the commissions to the payment of the notes, the defendant did orally extend the time of payment of the notes and continued in force the insurance policy until the next annual premium was due, and that defendant waived any forfeiture or lapse of the policy by reason of the failure of French to pay the notes when due, or at any time previous to his death; that under such arrangement the $125 was paid to this defendant and applied by it on account of the premium; that the insurance company retained possession of the notes and claimed and insisted that James M. French was liable thereon for the full amount thereof for the principal and interest until December 19, 1913, the day of his death; that on March 13, 1914, Elizabeth French, through her attorney, made a written demand upon the defendant, on behalf of the beneficiaries, for blanks on which to make due proof of the death of the insured, James M. French; that on March 14, 1914, the defendant answered this demand by letter stating in part that:

"Policy No. 6551, Jas. M. French, lapsed on July 15, 1913. Policy No. 6579, Jas. M. French, lapsed on July 24, 1913. Under these circumstances there is no occasion for furnishing blanks for proof of claim as there is no claim."

Plaintiff tenders defendant all moneys due upon the notes in payment of the premiums, and also a portion of one given for the first premium upon the policy dated May 24, 1912, and consents that the court may deduct from the amount due upon the policies of in-

surance the sum so due upon the notes, and any amounts to which defendant is lawfully entitled.

For a second cause of action plaintiff declares substantially the same upon policy 6579, issued May 24, 1912, to James M. French, in consideration of the payment to it of the premium of $170.13 upon his life, in which Irene C. French, his daughter, was named as beneficiary, which policy was assigned to plaintiff after his death. The note given for the second annual premium due on the May policy, which was dated June 24, 1913, for $170.13 is of the same tenor and form as the note set forth above. Upon the execution and delivery of such note the defendant company delivered to James M. French a receipt of substantially the same purport as the one above stated, but the note was referred to therein as follows: "Given in accordance with note dated June 24th, 1913." In connection with sending this receipt to French, the vice-president of the company wrote him a letter on June 24, 1913, in which he made the following statement regarding the payment of the premium, to wit:

"We are in receipt of your valued remittance, in payment of the premium on your policy, and have the pleasure of handing you the official receipt herewith."

The other allegations are practically the same as in the first cause of action except as to dates and name.

In its answer the defendant admits the execution of the two policies and the notes for the second annual premiums, but denies that the premiums were thereby paid, alleging that a conditional receipt was given therefor as set forth in plaintiff's complaint. The defendant denies that the conditional promissory notes were accepted by it in payment of the premiums; that under and by the terms of the conditional promissory

notes and the conditional receipts given therefor the March policy of insurance "was kept in force until only the fifteenth day of July, 1913''; and that the May policy was kept in force until July 24, 1913.

For answer to paragraph 9 of the first cause of action of the complaint the defendant "denies each and every allegation therein contained, except that this defendant denies any knowledge or information sufficient to form a belief as to whether or not there was still due to the said French for commissions on the sale of said stock in said paragraph set forth the sum of $125, and further except that this defendant admits that the conditional note in said paragraph referred to was not paid at the maturity thereof.''

For answer to paragraph 10 of the first cause of action the defendant "denies any knowledge or information sufficient to form a belief as to whether or not the said Oswell made his final payment upon the said corporate stock on December 1, 1913, and thereupon the said $125 due the said French on account of said commissions became immediately payable.''

Defendant admits that it still retains possession of the notes; that it refused to furnish blanks on which to make due proof of the death of James M. French, upon the ground that the policy had lapsed and was void, and that plaintiff had no claim thereunder; that this defendant was not liable therefor; that at that time defendant wholly repudiated its alleged liability upon the policies; and that James M. French is dead.

In its further and separate answer the gist of the allegations of the defendant is:

"That the second annual premium upon the said policy of life insurance became due, by the terms thereof, on the 11th day of March, 1913. That the said James M. French wholly failed, refused and neglected to pay the same upon said date, and the said James

M. French represented unto the said defendant that
he would pay said premium on or before July 15, 1913,
and requested the said Columbia Life & Trust Com-
pany to take his conditional promissory note therefor,
payable on or before July 15, 1913, and to keep said
insurance in force until said date, to wit, July 15, 1913.
That the said defendant agreed to accept the condi-
tional promissory note of the said James M. French
in the sum of $170.13, as herein alleged, and agreed
to keep said policy of life insurance in force until July
15, 1913, but if said conditional promissory note was
not paid on said date, that said policy of life insurance
should, on said date, to wit, July 15, 1913, lapse and
become of no further force and effect.   It was mu-
tually understood and agreed by and between the said
James M. French and this defendant that said condi-
tional promissory note so to be executed as aforesaid
was not payment of said premium then due on said
policy of life insurance, but, on the contrary, the said
Columbia Life & Trust Company agreed to keep said
policy of life insurance in force until July 15, 1913,
and thereafter for the current policy year, provided
that the conditional promissory note was paid in full
at the date of maturity thereof, to wit, July 15, 1913.
That pursuant to the agreement aforesaid, and within
the days of grace allowed by said policy, the said Jas.
M. French made, executed, and delivered to the Co-
lumbia Life & Trust Company his certain conditional
promissory note, as set forth in the complaint.   That
thereafter the defendant issued to James M. French
its conditional receipt for the conditional promissory
note as set forth in the complaint, no part of which
was paid when the same became due or at any time
thereafter.   That after the notes became due James
M. French was repeatedly notified and told that his
policies of life insurance had lapsed and were of no
force and effect, and on November 12, 1913, the com-
pany notified French to that effect in writing.   That
on or about February 20, 1914, and after the Columbia
Life and Trust Company had knowledge of his death,
a clerk of the company, through a clerical error and
mistake, mailed a notice to French as set forth in the

complaint. That by reason of the acts and facts
herein set forth said policy of life insurance so issued
on the life of James M. French lapsed and became void
and of no further force and effect on the 15th day of
July, 1913, and there is now nothing due on account
of or by virtue of said policy of life insurance.''

For like reasons the May policy became void and
lapsed on July 24, 1913. The reply puts in issue the
new matter of the answer in so far as it varies from
the complaint.

The substance of the evidence deemed necessary to
note is as follows: Mr. S. P. Lockwood, vice-president
of the company, was called as a witness by plaintiff,
and testified in part that the first premium on the
March policy was paid by note, and he believed the
note was afterward paid; that when the premium on
the March policy for the second year became due, it
was not paid in money, but within the days of
grace Mr. French gave a note in connection with that
premium dated April 10, 1913; that the note was on
that date entered on a record card as a premium pay-
ment and as a premium loan, and carried as an asset;
that the company never offered to return the note to
Mr. French before his death, to his knowledge, nor
asked for a return of the policy; that it was not the
practice of the company to demand a return of a pol-
icy; that on February 22, 1914, he had a talk with Mrs.
French in regard to money due her husband from the
Johnson-Bradford Safe Company, and said, ''I told
her the money had certainly not been paid to us, * *
and did not know whether there was any money due,''
but would inquire of Mr. Johnson, the secretary (who
is also secretary of the Johnson-Bradford Safe Com-
pany, but not the Johnson for whom the safe company
is named); that on the same day he, as vice-president
of the company, wrote Mrs. French a letter which is
in the record and states in part:

"Our Mr. Johnson informs me that about Dec. 1st, the second installment of $2,500 on the stock of the Johnson-Bradford Safe Co. was paid to the Johnson-Bradford Safe Co., but that up to the present time the commission which was due Mr. Troeh on this installment, and included in which is any amount which was due Mr. French, has not yet been paid to Mr. Troeh—there being some agreement between Mr. Troeh and the Johnson-Bradford Safe Company under which Mr. Troeh is leaving the amount with them."

Mr. M. M. Johnson, secretary and actuary of the company, was also called by the plaintiff, and he testified that the books of the Johnson-Bradford Safe Company show that the $2,500 due December 1, 1913, given by Mr. Oswell for stock, was paid November 28, 1913, upon which the $125 commission was due French; that the books of the insurance company regarding these two notes show as follows:

"Policy number 6551, twenty year endowment, $2,500.00, second year annual payment $170.13, March 11, entered on the 10th day of April. J. M. French, premium note entered under renewal premium, pure 163.67, load 6.56."

"Description of policy number 6579, twenty year endowment, amount $2,500, year, second, fraction, annual, amount of premium $170.13, due May 24. Entered June 24. J. M. French, premium note. Under renewal premium pure 163.57, load 6.56."

A similar entry in regard to the note given for the first annual premium is also shown on such books. Mr. Johnson further testified that the company's books do not show that the notes were "charged off," but that they were "considered charged off November 29, 1913"; that first premium notes are usually given to the agent and indorsed by him to the company and second premium notes are made to the company direct; that they investigated the financial standing of Mr. French before taking the notes and making the exten-

sion, and understood him to be worth several thousand dollars.

Mrs. French, plaintiff, testified that Mr. French died December 19, 1913; that soon afterward she went to the office of the defendant and was told that the policies had lapsed; that she inquired of Mr. Johnson, the secretary, if a commission of $125 that Mr. French was to receive from the Johnson-Bradford Safe Company had not been paid and he said, "No"; that in three or four days she went to Johnson-Bradford Safe Company to get the commission, and Mr. Johnson informed her that the $2,500 note had been paid, but not the commission; that the $125 "belonged to the Columbia Life"; that her husband had left a check or arranged so "it was to be paid to the Columbia Life as soon as the note was paid," the $2,500 note; that the $125 payment was for premiums already earned; that she asked if it "was usual for a man to pay on a lapsed policy"; and that afterward Mr. Lockwood wrote her the letter above referred to.

Edwin Lindstedt, witness for plaintiff, stated, in substance: That about December 23, 1913, he went to the office of defendant after the death of Mr. French and asked for blanks to prove the same. That Mr. Johnson said the policies were not in force, and when he inquired about the $125 commission, said "French made arrangement that that commission when (paid) should go direct to the Columbia Life to be applied upon the insurance policies." That the $2,500 note has not been paid. The witness stated that after he talked with Mr. Oswell he went to Mr. Johnson and told him he understood the $2,500 note was paid. That Johnson said: "It may have been paid. I see there is a commission due in the morning mail." That witness claimed a part of the commission, but that French had a right to use it.

Howard C. French, plaintiff's son, testified that in a conversation Mr. Johnson stated to him that there was no written statement, just a verbal agreement that this $125 commission was to be turned over to the Columbia Life when the $2,500 note was paid. The various letters and documents, to which reference has been made, including the written assignment of the May policy to plaintiff, were introduced in evidence.

A motion for a nonsuit was interposed by defendant and overruled, whereupon T. H. Richey, general agent of the insurance company for Portland, testified for defendant that it was his duty to see to the collection from policy-holders; that he had several interviews with Mr. French in respect to the payment of his premiums; that between the dates of maturity of the notes for the second premiums and about November 1, 1913, he tried to get him to reinstate his policies, and called his attention to the amount he would have to pay on a *pro rata* basis, even though he did not reinstate his policy; that Mr. French was very anxious to reinstate his policy, but was very hard up; that French said he was very sorry the policies had lapsed because of the terms of the note. The testimony of plaintiff's witness in regard to the statements made by Mr. Johnson, secretary of the insurance company, in regard to the arrangement for the payment of the $125 commission to that company on the policies, was not contradicted.

It is contended by counsel for plaintiff that the second annual premiums on the policies were paid by the two notes given by French; that at that time French was under no legal obligation to pay the second annual premium, and there was then no preexisting debt owing to defendant; that in such case the presumption is that notes were taken in payment of the legal obligation created at the time the notes

were given; that the provisions in the notes to the effect that if the same were not paid at maturity the respective policies should be forfeited were of no force, for the reason that neither of the policies provided for a forfeiture for the nonpayment of a premium note. It is maintained by counsel for defendant that the effect of the acceptance of the conditional notes was to extend the time of the payment of the premiums and keep the policies in force until the maturity of the respective notes; that the agreement between the insurance company and the insured contained in the notes, made in consideration of the extension of time for payment of the premiums until the maturity of the respective notes, to the effect that if payment was not made at the maturity of the note the policy should lapse and be of no further force or effect, is a valid binding contract, and that by virtue thereof, the notes not being paid, the policies lapsed on the 15th and 24th of July, 1913, respectively. Plaintiff also contends that if the right of forfeiture of the policies did accrue to defendant, it waived the same.

We will first take up the matter of the forfeiture clause in the premium notes, and for a better understanding will refer to some of the general rules of law as announced by the courts and text-writers. As has been stated, may times, the law does not favor forfeitures, and very slight circumstance will be taken advantage of to avoid the effect of a forfeiture: *Security L. & A. Co.* v. *Underwood* (Tex. Civ. App.), 150 S. W. 293; *Insurance Co.* v. *Norton,* 96 U. S. 234 (24 L. Ed. 689). It is said in 2 May on Insurance (4 ed.), Section 341, in effect, that if the policy by its terms is forfeitable for nonpayment of premium, or any note given for a premium, when due, a failure to pay at maturity a note given for a premium, or any installment

or interest thereon, when due, works a forfeiture. In Section 342, Id., we find:

"But when the policy is forfeitable for nonpayment of the premium, but does not distinctly provide that the nonpayment of a note given therefor at maturity shall work a forfeiture, as this clause is inserted for the benefit of the insurers it must be taken most strongly against them, and the nonpayment of the note at maturity will not work as a forfeiture. The courts will not extend the operation of a condition, the breach of which involves a forfeiture, to a case not clearly within it. * * *"

Much to the same effect, see, also, 2 Joyce, Insurance, § 1211; 2 May, Insurance, §§ 468, 469; *Dwelling-House Ins. Co.* v. *Hardie,* 37 Kan. 674 (16 Pac. 92); *Arnold* v. *Empire Mutual Ins. Co.,* 3 Ga. App. 685 (60 S. E. 470); *McGehee* v. *Rinker,* 9 Ga. App. 147 (70 S. E. 962); *Fidelity Mut. Life Ins. Co.* v. *Goza,* 13 Ga. App. 20 (78 S. E.. 735); *Columbia etc. Ins. Co.* v. *Mulkey,* 13 Ga. App. 508 (79 S. E. 482); *Union Cent. Life Ins. Co.* v. *Buxer,* 62 Ohio St. 385 (57 N. E. 66, 49 L. R. A. 737); *Montgomery* v. *Phoenix M. Life Ins. Co.,* 14 Bush (Ky.), 51; *McAllister* v. *Northeastern Mut. Life Ins. Co.,* 101 Mass. 558 (3 Am. Rep. 404); *Insurance Co.* v. *French,* 30 Ohio St. 240 (27 Am. Rep. 443); *Thompson* v. *Insurance Co.,* 104 U. S. 252 (26 L. Ed. 765).

It has been held that where the policy provides for a forfeiture thereof for the nonpayment of the premium or a premium note, the right to declare such forfeiture may be waived by the insurer, and that whether the insurance company. has exercised its option to declare a forfeiture of the policy or waived its rights to do so, where such an issue is raised, is a question of fact for the determination of the jury under all the circumstances of the case: *Security L. & A. Co.* v.

*Underwood* (Tex. Civ. App.), 150 S. W. 293; *Massachusetts Ben. L. A.* v. *Robinson,* 104 Ga. 256 (30 S. E. 918, 42 L. R. A. 261; *Insurance Co.* v. *Norton,* 96 U. S. 234 (24 L. Ed. 689); *Hastings* v. *Brooklyn L. Ins. Co.,* 138 N. Y. 473 (34 N. E. 289); Id., 53 Hun, 631 (6 N. Y. Supp. 374); *Shawnee* v. *Cannedy,* 36 Okl. 733 (129 Pac. 865, 44 L. R. A. (N. S.) 376); *Insurance Co.* v. *French,* 30 Ohio St. 240 (27 Am. Rep. 443); *Grigsby* v. *Russell,* 222 U. S. 149, 155 (56 L. Ed. 133, 32 Sup. Ct. Rep. 58, Ann. Cas. 1913B, 863, 36 L. R. A. (N. S.) 642); *Oakes* v. *Manufacturing F. & M. Ins. Co.,* 135 Mass. 248; *Cranston* v. *West Coast L. Ins. Co.,* 63 Or. 247, 438 (128 Pac. 427); *Stringham* v. *Mutual Ins. Co.,* 44 Or. 447, 459 (75 Pac. 822).

It has also been held that an unconditional demand for payment followed by proceedings to collect a past-due premium note, operates as a waiver: 3 Cooley, Insurance Briefs, §§ 2724, 2726. See, also, *Federal Life Ins. Co.* v. *Warren* (Ky.), 181 S. W. 331.

We will hereafter refer to only one policy, as the same discussion will apply to both. In the present case the provisions in the policy plainly direct that any indebtedness thereon to the company shall be deducted from the amount to be paid to French or the beneficiary named. It is also clearly stipulated therein that the "policy and the application therefor shall constitute the entire contract between the parties." A clause to the same effect is contained in the application. There is no provision for a forfeiture thereof on account of the nonpayment of a premium note. At the time the premium was due the company did not insist upon a forfeiture in case of nonpayment, as it had a right to do. On the contrary, as set forth in the answer and claimed in the brief of defendant, the company extended the time of payment and accepted

the note of the insured, conditioned, as stated above, that if not paid on the date of maturity, the policy should lapse and become of no force, and that by reason of the agreement alleged in the answer, the purport of which is shown in the note, the company claims that it is not liable on the policy. Apparently, in view of the fact that in most instances life insurance policies are intended for the protection of relatives after the decease of the insured, the legislature of this state in its wisdom saw fit to enact Section 4632, L. O. L. After declaring that no life insurance company shall permit any discrimination, the section continues:

"Nor shall any such company or representative thereof make any contract of insurance, or agreement as to such contract, other than as plainly expressed in the policy issued thereon."

While there is some divergence in the opinions of the courts upon the question of forfeiture of an insurance policy, which is in the main due to the variant facts in the cases considered, our statute above noted directs with which line of decisions those of the courts of this state should be classed. In *Mutual Life Ins. Co.* v. *Kelly*, 114 Fed. 268 (52 C. C. A. 154), a case before the Circuit Court of Appeals, Judge ADAMS construes a statute of the State of Iowa, similar to ours, which contains this clause:

"Nor shall any company or any agent thereof make any contract of insurance or agreement as to such contract, other than is plainly expressed in the policy issued thereon."

At page 272 of 114 Fed., at page 158 of 52 C. C. A., of the opinion he clearly states the purpose of this statute thus:

"The act of Iowa, *supra,* in our opinion, creates no exception to the foregoing general rule governing the interpretation of contracts. That act was obviously intended for three purposes: (1) To prevent discriminations in favor of particular insurants; (2) to secure that certainty with respect to the rights and duties of the parties which is always best attained by written agreements; (3) to provide a ready and available method by which the insured or assured may, at all times have before them the covenants and agreements which they are required to observe or perform."

We also find the following at page 274 of 114 Fed., at page 160 of 158 C. C. A.:

"It cannot be disputed that plaintiff, who was Kelly's wife and beneficiary in the policy in question, had a certain vested interest in the policy immediately upon its issue; such an interest, in fact, that neither Kelly nor the insurer, nor both, could, by appointment or agreement, take from her without her consent. Her rights were created by the contract, and she, as one of the parties thereto, must, on familiar principles, consent to any deprivation, modification or change of such rights before the same can be accomplished: *Bank* v. *Hume,* 128 U. S. 195, 206 (32 L. Ed. 370, 9 Sup. Ct. Rep. 41), and cases cited."

In *Bowyer* v. *Continental Casualty Co.,* 72 W. Va. 333 (78 S. E. 1001), we find:

"The purpose of statutes of this kind, as declared by the courts, in other states, is to require the contract to be so formed as to enable the insured or assured at all times to have before him the covenants and agreements which he is required to observe or perform and relieve him from the burden of relying upon his recollection of the terms of his contract."

To the same effect, see *Provident Sav. Life Assur. Soc.* v. *Puryear's Admr.,* 109 Ky. 381 (59 S. W. 15). The Iowa Code provides that an insurance company which neglects to attach to or indorse on its policies

a copy of any application or representation of the insured, which by the terms of the policy is made a part of the contract of insurance, or which may, in any manner, affect its validity, shall be precluded from setting up such representation in defense to an action on the policy. Under this section (1741) of the Code it was held in *Summers* v. *Des Moines Ins. Co.,* 116 Iowa, 593 (88 N. W. 326), that an insurance company which fails to attach to or indorse on a policy a copy of a premium note given therefor will be precluded from setting up nonpayment of the note in defense, though the policy provides that it will be void if the premium is not paid when due: See, also, *Lewis* v. *Insurance Co.,* 71 Iowa, 97 (32 N. W. 190) ; Id., 80 Iowa, 259 (45 N. W. 749). In this last case the policy provided in substance that it should be void if any premium note should be overdue and unpaid at the time of the loss: 1 Cooley, Briefs on Insurance, p. 664. Our statute in effect adopts the rule above quoted from the text-book. The legislature has the constitutional power to prescribe the form of a policy of life insurance and to provide that all contracts of the insurer and the insured shall, in some way, be embraced therein in order that the insurant may leave a complete written record of the business when he can no longer tell his story: *Considine* v. *Mutual Life Ins. Co.,* 165 Mass. 462 (43 N. E. 201); *New Era Life Assn.* v. *Musser,* 120 Pa. 384 (14 Atl. 155). That the note given for the second annual premium is a valid one, as treated by both of the parties, seems to us to be beyond the pale of discussion. There is no inhibition against an insurance company taking payment of a premium in commercial paper, or any other thing of value, or doing a credit business, as the policy issued by this company indicates it proposes to do: *Amarillo L. I. Co.* v. *Brown*

(Tex. Civ. App.), 166 S. W. 658. The transaction was of the same force as though the company had loaned Mr. French $170.13 and taken his note therefor, and he in turn had paid the money to the company for the premium and received its receipt therefor. Neither does there appear to be any room for controversy as to the fact that when the premium became due the company waived its right to insist upon a forfeiture then, accepted the note, and thereby extended the time of payment until July. The question arises upon the forfeiture clause, contained in the note, which is no part of the policy. Had the latter instrument provided that upon failure to pay a premium note the policy should lapse, the case would be different. Independent of our statute, we think the rule founded upon the better reason, as well as sanctioned by the weight of authority, is that the courts will not declare a forfeiture of such a policy unless it distinctly provides therefor; that where such an instrument makes provision for a forfeiture for nonpayment of the premium, but in no way provides that the failure to pay a premium note at maturity shall work such a penalty, the courts should not extend the operation of the condition stipulated as a basis of forfeiture beyond the terms of the contract made by the parties as shown by the policy. The agreement set out in the answer and provided for in the note, to the effect that upon the nonpayment of the note given for the second annual premium the policy should be forfeited, not being contained in the contract of insurance, should not be enforced as against the beneficiary. To do so would be for the court to enforce a forfeiture "not nominated in the bond." The parties should make their own contracts, and in the manner directed by the statute.

As to a waiver, aside from the questions noted: Neither the policy nor the clause attached to the note provides that if the latter is not paid at maturity the same shall thereby become a nullity. Under any phase of the case, if it saw fit the company could retain the note and insist upon its collection, or, in other words, waive the right of forfeiture, if it had that right, when the note matured. The company retained the $170.13 note. The letter of November 12, 1913, in which the note is included among those mentioned, did not indicate to French that the company claimed only a *pro rata* part sufficient to pay the premium to the date of the maturity of the note. Not until after his death does it appear that the amount of premium to that date was ever computed. The note remained upon the records of the company as a valid claim against French during his life. About a month before he died it is stated that it was "considered charged off." The official receipt issued would indicate to the ordinary mind that the premium was paid for one year by the acceptance of the note. The letter stating that the company had received "remittance in payment of the premium on your policy" would naturally confirm the same belief. The arrangement as to the $125 as testified to by plaintiff's witnesses, if made, would be quite a substantial compliance with the demand in the letter of November 12th for a "substantial payment," and may have been a reason for the belief in the mind of French that his policy was still in force. All the evidence taken together tended to show a waiver of forfeiture, if there was one, and that question should have been submitted to the jury. The writer is firmly convinced, however, that the case should be determined by the court upon the former point.

James French, the insured, died on December 19, 1913, while the policy was still in force. The insurance company waived formal proof of death. There is no controversy in regard thereto. The trial court erred in directing a verdict and entering judgment in favor of defendant. Under the facts in this case the judgment of the lower court should be reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE MOORE concurs in the result.

---

Denied May 16, 1916.

PETITION FOR REHEARING.

(156 Pac. 1058.)

*Mr. Richard W. Montague* and *Mr. Prescott W. Cookingham,* for the petition.

*Mr. Guy C. H. Corliss, contra.*

In Banc.   MR. JUSTICE BENSON delivered the opinion of the court.

We have read with great care and consideration the appellant's able petition for rehearing, but find nothing contained therein that had not already received the most earnest consideration of this court prior to the preparation of the opinions heretofore handed down. We have given much time and thought to the arguments and authorities cited by appellant and have examined the testimony very thoroughly and carefully. In addition to this, we have heard a reargument of the case by the learned counsel for both parties, and we see no reason for any change or

modification in the views heretofore expressed. The petition for rehearing is therefore denied.

AFFIRMED. REHEARING DENIED.

Mr. Justice Eakin absent.

Mr. Justice Bean dissents.